# ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 0 7 2008

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| VURV TECHNOLOGY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **1**A. No. **08-CV-3442** *WSD* |
| | ) |
| KENEXA CORPORATION; | ) |
| KENEXA TECHNOLOGY, INC.; | ) |
| DAWN CLEMENTS; and MICHELE | ) **JURY TRIAL DEMANDED** |
| SWEARINGEN, | ) |
| | ) |
| Defendants. | ) |

## ORIGINAL COMPLAINT

Vurv Technology LLC ("Vurv") files this Original Complaint against Kenexa Corporation and Kenexa Technology, Inc. (collectively, "Kenexa") and against Dawn Clements ("Clements") and Michele Swearingen ("Swearingen"), as follows:

### I.      Nature of the Lawsuit

1.      This lawsuit involves the unauthorized copying, use, and disclosure of Vurv's confidential and proprietary information.  In addition to bringing claims for breach of contract, computer trespass and theft, misappropriation of trade secrets, tortious interference with contract, computer fraud and abuse, and civil conspiracy, Vurv asks the Court to enter preliminary and permanent injunctions

1

against Kenexa, Clements, and Swearingen, enjoining them from viewing, using, copying, disclosing, or disseminating Vurv's confidential and proprietary information and ordering them to return all documents and electronic media containing such information.

2.    As explained more fully below, Vurv recently discovered through an ongoing internal investigation that Clements and Swearingen (Vurv's former employees) improperly accessed and copied thousands of documents, folders, and .zip files after it was determined that they would not accept offers to continue their employment with Vurv, after they accepted offers of employment from Kenexa, and before they returned Vurv's computers to Vurv.  Clements and Swearingen now work for Kenexa, one of Vurv's primary competitors and, upon information and belief, were employed by Kenexa at the time they improperly accessed and copied Vurv's confidential and proprietary information.

3.    Injunctive relief is appropriate under the circumstances because Vurv will be immediately and irreparably harmed if Kenexa, Clements, and/or Swearingen are permitted to view, use, copy, disclose, or disseminate Vurv's confidential and proprietary information.   Injunctive relief is also warranted because:  (a) money damages will be inadequate;  (b) Vurv has no adequate remedy at law; (c) there is a substantial likelihood of Vurv's success on the merits;

2

(d) the risk of harm to Vurv outweighs any harm that an injunction might inflict on Clements, Swearingen, and/or Kenexa;   (e) the public interest will not be disserved;   and (f) Clements and Swearingen signed confidentiality agreements stating that they could be subjected to injunctive relief in the event they breached their obligations under those agreements.

## II.    Jurisdiction and Venue

4.    This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of Delaware and Florida, on the one hand, and citizens of Georgia and citizens of Pennsylvania, on the other hand.  This Court also has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1331 because it arises, in part, under an act of Congress relating to computer fraud and abuse.

5.    This Court has personal jurisdiction over Kenexa because Kenexa has sufficient minimum contacts with Georgia and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.  This Court has personal jurisdiction over Clements and Swearingen because they are citizens and residents of Georgia.  This Court has personal jurisdiction over Kenexa, Clements,

and Swearingen, because they transact business in Georgia and committed the tortious acts giving rise to Vurv's claims in Georgia.

      6.    Venue is proper under 28 U.S.C. § 1391.

### III.  Parties

      7.    Vurv is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 7660 Centurion Parkway, Suite 100, Jacksonville, Florida  32256.

      8.    Kenexa Corporation is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located at 650 East Swedesford Road, Wayne, Pennsylvania  19087.  Kenexa Corporation may be served with process at its registered office address, 650 East Swedesford Road, Wayne, Pennsylvania  19087, by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.

      9.    Kenexa Technology, Inc. is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located at 650 East Swedesford Road, Wayne, Pennsylvania  19087.  Kenexa Technology, Inc. may be served with process through its registered agent, CT Corporation System, 1201 Peachtree Street NE, Atlanta, Georgia  30361.

10.     Dawn Clements is an individual residing at 1356 May Avenue, Atlanta, Georgia 30316. Clements may be served with process at this address.

11.     Michele Swearingen is an individual residing at 175 Willow Brook Drive, Roswell, Georgia 30076. Swearingen may be served with process at this address.

### IV.     Supporting Declarations

12.     Vurv's Original Complaint and the application for injunctive relief contained herein are supported by the declarations of Michelle Stark, Christopher Lee, and Michael De La Cruz. These declarations are incorporated by reference.

### V.     Factual Background

13.     Vurv is the successor in interest to Vurv Technology, Inc., Recruitmax Software, Inc., and Creative System Solutions, Inc. (collectively, "Vurv").

14.     Vurv provides human capital management solutions used by human resources organizations to assess, acquire, develop, and align their workforces. Vurv's software applications, which are a part of the solutions Vurv offers, are available to Vurv's customers under limited licensing agreements and are subject to Vurv's rights, including, but not limited to, Vurv's valid copyrights. Kenexa is one of Vurv's primary competitors in the human capital management market.

5

15. In January 2002, Vurv made employment offers to Clements and Swearingen, who accepted the offers and began working for Vurv in February 2002. As a condition of their employment, Vurv required Clements and Swearingen to sign confidentiality agreements. True and correct copies of Clements's and Swearingen's Confidentiality Agreements are attached as Exhibits A and B, respectively, and are incorporated by reference. By signing these agreements, Clements and Swearingen promised that they would hold Vurv's confidential and proprietary information in strictest confidence and would not disclose such information to any person, firm, or corporation without prior written authorization.

16. Clements and Swearingen also agreed that they could be held strictly liable for any abuse of Vurv's computers or systems by use of their workstations or passwords, including, but not limited to, accessing Vurv's computers or systems to wrongfully obtain or otherwise use Vurv's data, and taking, copying, or making use of any data or supporting documentation from a Vurv computer, system, or network without permission. Clements and Swearingen further agreed that, when they left Vurv's employment, they would:

> deliver to [Vurv] (and [would] not keep or deliver to anyone else) any and all materials, data, notes, reports, lists, documents or other property, including, but not limited to, Confidential information, or reproductions of any aforementioned items, belonging to [Vurv], its

6

successors or assigns, employees, clients, consultants, vendors, licensees, or others with interest in [Vurv].

Clements and Swearingen also acknowledged their understanding that a breach of any of their obligations under these confidentiality agreements could subject them to pecuniary damages and injunctive relief.

17. Contrary to their agreements to hold Vurv's confidential and proprietary information in strictest confidence, and to deliver to Vurv (and not to keep or deliver to anyone else) any and all of Vurv's confidential and proprietary information upon leaving Vurv's employment, Clements and Swearingen improperly accessed and stole Vurv's information, taking it with them when they went to work for Kenexa, one of Vurv's primary competitors. By doing so, Clements and Swearingen gave Kenexa access to, disclosed to Kenexa, and/or used on Kenexa's behalf, Vurv's confidential and proprietary information.

18. In August 2008, after Clements and Swearingen had left Vurv's employment and had returned Vurv's computers, Vurv sent the computers that Clements and Swearingen had been using to a computer forensics firm for analysis. The computer forensics firm reported activity on both computers that was indicative of the copying of data. This report led to an internal investigation to determine whether there could be an innocent explanation for Clements's and Swearingen's copying of Vurv's confidential and proprietary information at a time

7

when Clements and Swearingen both knew they were leaving Vurv to go to work for Kenexa.  Although its investigation is ongoing, Vurv has discovered facts sufficient to conclude that there could be no innocent explanation for Clements's and Swearingen's unauthorized copying of Vurv's confidential and proprietary information.

19.    After it was known that they would be leaving Vurv's employment, Clements and Swearingen attached virtually identical external hard drives to Vurv's computers and then improperly accessed and copied thousands of documents, folders, and .zip files.  Among the files stolen by Clements and Swearingen and taken with them in their new jobs at Kenexa were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information. Clements and Swearingen later returned Vurv's computers, but they did not return any external hard drives or any other backup media.

20.    Around the same time that Clements and Swearingen were improperly accessing and copying Vurv's confidential and proprietary information, they established outside channels of communication with Kenexa executives that would not involve using their Vurv e-mail accounts.  On the same day that Swearingen attached a hard drive to Vurv's computer and began copying Vurv's confidential

and proprietary information, for example, she sent an e-mail to Sarah Teten, Kenexa's Chief Marketing Officer. The e-mail's subject line simply contained the word "email" and its body simply contained Swearingen's personal Hotmail e-mail address. Clements's personal Hotmail e-mail contacts included at least two Kenexa employees, including Troy Kanter, Kenexa's President and Chief Operating Officer.

21.    Both Clements and Swearingen now work for Kenexa in positions similar to those they held at Vurv. When they stole Vurv's confidential and proprietary information, Clements and Swearingen had already accepted employment offers from Kenexa and, upon information and belief, were Kenexa employees.

22.    When Clements and Swearingen improperly accessed and copied Vurv's confidential and proprietary information and failed to return such information upon leaving Vurv's employment, they not only breached their confidentiality agreements, but also took with them unauthorized copies of Vurv's confidential and proprietary information, thus misappropriating Vurv's trade secrets and violating Vurv's exclusive rights in its copyrighted works.

23.    Kenexa is one of Vurv's primary competitors. Kenexa Technology, Inc. is the wholly owned subsidiary of Kenexa Corporation. There exists, and at

9

all relevant times there has existed, a unity of interest and ownership between Kenexa Technology, Inc. and Kenexa Corporation such that any individuality and separateness between them have ceased, and these companies are alter egos of each other.  For this reason, adherence to the fiction of the separate existence of these companies as entities distinct from each other would permit an abuse of the corporate privilege and would promote injustice in that, as explained below, each will be allowed to benefit from the other's unauthorized access to, and use of, Vurv's confidential and proprietary information.

24.     In addition to being alter egos of each other, the Kenexa companies' operations (including, upon information and belief, their computer and network systems) are integrated, and the companies operate together as a single-source vendor of products and services.  When announcing the acquisition of what was then BrassRing, Inc., for example, Rudy Karson, the chief executive officer of Kenexa, acknowledged that the newly acquired company would not operate separately, but would merely become a part of the larger Kenexa organization: "And we'll be operating [Kenexa] as one company [as] we have historically.  So it won't be a separate subsidiary."

25.     Kenexa was aware that Clements and Swearingen had access to Vurv's confidential and proprietary information.  While Clements and Swearingen

were still employed at Vurv but before they had returned Vurv's computers, Kenexa made employment offers to them and conspired with them to improperly access and copy Vurv's confidential and proprietary information in order to gain a competitive advantage.   By doing so, Kenexa interfered with the contractual relationship between Vurv and its employees, inducing Clements and Swearingen to breach their confidentiality agreements, misappropriate Vurv's trade secrets, and violate Vurv's exclusive rights in its copyrighted materials.

## VI.   Causes of Action

## COUNT 1

## Breach of Contract

## (Against Clements and Swearingen)

26.    Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

27.    Clements and Swearingen have engaged in activities that constitute breach of contract under Georgia law.

28.    After accepting Vurv's employment offers, both Clements and Swearingen signed confidentiality agreements.   These agreements are valid and binding contracts.   By signing these agreements, Clements and Swearingen promised that they would hold Vurv's confidential and proprietary information in

11

strictest confidence and would not disclose such information to any person, firm, or corporation without prior written authorization. Clements and Swearingen also agreed to deliver to Vurv (and not to keep or deliver to anyone else) any and all of Vurv's confidential and proprietary information upon leaving Vurv's employment.

29.     Despite these promises, Clements and Swearingen improperly accessed and stole Vurv's confidential and proprietary information, taking it with them when they went to work for Kenexa. After it was known that they would be leaving Vurv's employment and after they had accepted offers of employment from Kenexa, for example, Clements and Swearingen attached virtually identical external hard drives to Vurv's computers and then improperly accessed and copied thousands of documents, folders, and .zip files. Clements and Swearingen later returned Vurv's computers, but they did not return any external hard drives or any other backup media.

30.     Clements and Swearingen breached the confidentiality agreements they signed by copying and failing to return Vurv's confidential and proprietary information, and by taking this information with them to Kenexa, thereby giving Kenexa access to, disclosing to Kenexa, and using on Kenexa's behalf, Vurv's confidential and proprietary information.

12

31.    Clements's and Swearingen's breaches of the confidentiality agreements they signed have caused, and will continue to cause, Vurv to suffer damages.

## COUNT 2

### Computer Theft in Violation of O.C.G.A. § 16-9-93(a)

### (Against All Defendants)

32.    Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

33.    Clements, Swearingen, and Kenexa have engaged in activities that constitute computer theft under O.C.G.A. § 16-9-93(a).

34.    The day before her last day of employment with Vurv and after she had accepted an offer of employment from Kenexa, Clements attached—for the first time—an external hard drive to her Vurv-issued computer. Minutes later, Clements improperly accessed and copied approximately 1,300 files. These files were all accessed in a matter of about 15 minutes. Among the files Clements stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

35.    After Clements's last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she had begun her employment with Kenexa, Clements continued to access and copy large groups of documents, folders, and .zip files in short increments of time. When Clements returned Vurv's computer, she did not return any external hard drive or any other backup media.

36.    On the same day that it was determined that Swearingen would not accept the offer to continue her employment with Vurv after its acquisition by Taleo Corporation and after she had accepted an offer of employment from Kenexa, Swearingen attached—for the first time—an external hard drive to her Vurv-issued computer. Minutes later, Swearingen improperly accessed and copied more than 1,000 files in about 13 minutes. Later the same day, Swearingen accessed and copied around 850 folders containing multiple files in about 3 minutes and about 80 .zip files containing multiple files in 1 minute. Among the files Swearingen stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

37.    After her last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she

had begun her employment with Kenexa, Swearingen continued to access and copy folders containing multiple files in relatively short increments of time. When Swearingen returned Vurv's computer, she did not return any external hard drive or any other backup media.

38.    When they stole Vurv's confidential and proprietary information, Clements and Swearingen had already accepted employment offers from Kenexa and, upon information and belief, were Kenexa employees.

39.    Kenexa, Clements, and Swearingen knew that they did not have authority to take or appropriate Vurv's confidential and proprietary information from Vurv's computers or computer networks, or to convert such information for their business or personal use. Nevertheless, they used Vurv's computers to take, appropriate, or convert Vurv's property, and did so by deceitful means. Not only was such copying of Vurv's confidential and proprietary information outside the scope of Clements's and Swearingen's job responsibilities with Vurv, but it was also contrary to the express provisions of the confidentiality agreements they signed, agreeing that they would not use, copy, keep, or deliver to anyone else, any of Vurv's confidential and proprietary information upon leaving Vurv's employment.

40.    Clements's, Swearingen's, and/or Kenexa's thefts of Vurv's confidential and proprietary information in the form of data copied or removed from Vurv's computers or computer networks have caused, and will continue to cause, Vurv to suffer damages.

### COUNT 3

### Conspiracy to Commit Computer Theft

### (Against All Defendants)

41.    Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

42.    If Clements and Swearingen were not Kenexa employees when they stole Vurv's confidential and proprietary information, then Vurv alleges, in the alternative to its claim of computer theft against Kenexa, that Clements, Swearingen, and Kenexa have engaged in activities that constitute conspiracy to commit computer theft under Georgia law.

43.    While Clements and Swearingen were still employed at Vurv, or after their last day but before they had returned Vurv's computers, Clements, Swearingen, and Kenexa, upon information and belief, entered into a conspiracy to accomplish a common, unlawful design to steal Vurv's confidential and proprietary information.  They arrived at a mutual understanding that, before

Clements and Swearingen returned Vurv's computers and started working for Kenexa, Clements and Swearingen would copy or remove Vurv's confidential and proprietary information from Vurv's computers or computer networks, despite not having the permission or authority to do so.

44.     In furtherance of their unlawful design, the conspirators obtained two virtually identical external hard drives. Clements and Swearingen then improperly accessed and copied Vurv's confidential and proprietary information, using the hard drives to store the data unlawfully copied or removed from Vurv's computers or computer networks.

45.     Clements's, Swearingen's, and/or Kenexa's thefts of Vurv's confidential and proprietary information in furtherance of their conspiracy have caused, and will continue to cause, Vurv to suffer damages.

## COUNT 4

### Computer Trespass in Violation of O.C.G.A. § 16-9-93(b)

### (Against All Defendants)

46.     Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

47.     Clements, Swearingen, and Kenexa have engaged in activities that constitute computer trespass under O.C.G.A. § 16-9-93(b).

48. The day before her last day of employment with Vurv and after she had accepted an offer of employment from Kenexa, Clements attached—for the first time—an external hard drive to her Vurv-issued computer. Minutes later, Clements improperly accessed and copied approximately 1,300 files. These files were all accessed in a matter of about 15 minutes. Among the files Clements stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

49. After Clements's last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she had begun her employment with Kenexa, Clements continued to access and copy large groups of documents, folders, and .zip files in short increments of time. When Clements returned Vurv's computer, she did not return any external hard drive or any other backup media.

50. On the same day that it was determined that Swearingen would not accept the offer to continue her employment with Vurv after its acquisition by Taleo Corporation and after she had accepted an offer of employment from Kenexa, Swearingen attached—for the first time—an external hard drive to her Vurv-issued computer. Minutes later, Swearingen improperly accessed and copied

18

more than 1,000 files in about 13 minutes. Later the same day, Swearingen accessed and copied around 850 folders containing multiple files in about 3 minutes and about 80 .zip files containing multiple files in 1 minute. Among the files Swearingen stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

51. After her last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she had begun her employment with Kenexa, Swearingen continued to access and copy folders containing multiple files in relatively short increments of time. When Swearingen returned Vurv's computer, she did not return any external hard drive or any other backup media.

52. When they stole Vurv's confidential and proprietary information, Clements and Swearingen had already accepted employment offers from Kenexa and, upon information and belief, were Kenexa employees.

53. Kenexa, Clements, and Swearingen knew that they did not have authority to remove Vurv's confidential and proprietary information from Vurv's computers or computer networks. Nevertheless, they used Vurv's computers to

remove thousands of documents, folders, and .zip files from Vurv's computers or computer networks.

54.     Clements's, Swearingen's, and/or Kenexa's trespasses to Vurv's computers or computer networks have caused, and will continue to cause, Vurv to suffer damages.

## COUNT 5

## Conspiracy to Commit Computer Trespass

## (Against All Defendants)

55.     Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

56.     If Clements and Swearingen were not Kenexa employees when they removed data composed of Vurv's confidential and proprietary information, then Vurv alleges, in the alternative to its claim of computer trespass against Kenexa, that Clements, Swearingen, and Kenexa have engaged in activities that constitute conspiracy to commit computer trespass under Georgia law.

57.     While Clements and Swearingen were still employed at Vurv, or after their last day but before they had returned Vurv's computers, Clements, Swearingen, and Kenexa, upon information and belief, entered into a conspiracy to accomplish a common, unlawful design to steal Vurv's confidential and

proprietary information.   They arrived at a mutual understanding that, before Clements and Swearingen returned Vurv's computers, Clements and Swearingen would copy or remove Vurv's confidential and proprietary information from Vurv's computers or computer networks, despite not having the permission or authority to do so.

58.    In furtherance of their unlawful design, the conspirators used Vurv's computers or networks without authority and with the intention of removing data composed of Vurv's confidential and proprietary information.

59.    Clements's, Swearingen's, and/or Kenexa's trespasses to Vurv's computers or computer networks in furtherance of their conspiracy have caused, and will continue to cause, Vurv to suffer damages.

## COUNT 6

**Misappropriation of Trade Secrets in Violation of O.C.G.A. § 10-1-761 *et seq*.**

**(Against All Defendants)**

60.    Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

61.    Clements, Swearingen, and Kenexa have engaged in activities that constitute misappropriation of trade secrets under O.C.G.A. § 10-1-761 *et seq*.

62.     Vurv maintains confidential and proprietary information in the form of documents stored on Vurv's computers or computer networks.

63.     Vurv allows its employees to access and use its computers and computer networks only after they have entered into agreements that require them to maintain in strictest confidence Vurv's confidential and proprietary information. Vurv has never given permission to or authorized Kenexa, Clements, or Swearingen to copy and retain, or deliver to others, Vurv's copyrighted information.  In fact, using, copying, keeping, or delivering to anyone else any of Vurv's confidential and proprietary information upon leaving Vurv's employment would be contrary to the express provisions of the confidentiality agreements Clements and Swearingen signed.

64.     The day before her last day of employment with Vurv and after she had accepted an offer of employment from Kenexa, Clements attached—for the first time—an external hard drive to her Vurv-issued computer.  Minutes later, Clements improperly accessed and copied approximately 1,300 files.  These files were all accessed in a matter of about 15 minutes.  Among the files Clements stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

65.    After Clements's last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she had begun her employment with Kenexa, Clements continued to access and copy large groups of documents, folders, and .zip files in short increments of time. When Clements returned Vurv's computer, she did not return any external hard drive or any other backup media.

66.    On the same day that it was determined that Swearingen would not accept the offer to continue her employment with Vurv after its acquisition by Taleo Corporation and after she had accepted an offer of employment from Kenexa, Swearingen attached—for the first time—an external hard drive to her Vurv-issued computer. Minutes later, Swearingen improperly accessed and copied more than 1,000 files in about 13 minutes. Later the same day, Swearingen accessed and copied around 850 folders containing multiple files in about 3 minutes and about 80 .zip files containing multiple files in 1 minute. Among the files Swearingen stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

67.    After her last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she

had begun her employment with Kenexa, Swearingen continued to access and copy folders containing multiple files in relatively short increments of time.   When Swearingen returned Vurv's computer, she did not return any external hard drive or any other backup media.

68.    When they stole Vurv's confidential and proprietary information, Clements and Swearingen had already accepted employment offers from Kenexa and, upon information and belief, were Kenexa employees.

69.    Clements and Swearingen knew, or had reason to know, that they used improper means to obtain Vurv's trade secrets when they improperly accessed and copied thousands of documents, folders, and .zip files before returning their computers.   Moreover, Clements and Swearingen knew, or had reason to know, at the time of disclosure that they used improper means to obtain Vurv's trade secrets because they breached their duty to maintain secrecy.

70.    Kenexa has known, and knows, that Vurv's employees are required to maintain strict confidentiality with respect to Vurv's confidential and proprietary information, that this information is not available to the general public, and that this information is subject to Vurv's rights, including, but not limited to, Vurv's valid copyrights.

71.    Upon information and belief, Kenexa used improper means to acquire knowledge of Vurv's trade secrets by, among other things, inducing Clements and Swearingen to steal Vurv's confidential and proprietary information and to breach their duty to maintain secrecy.    Moreover, at the time of disclosure or use of Vurv's trade secrets, Kenexa knew, or had reason to know, that Clements and Swearingen used improper means to acquire knowledge of Vurv's trade secrets, and that Kenexa's knowledge of Vurv's trade secrets was derived from or through Clements and Swearingen, both of whom owed a duty to Vurv to maintain their secrecy or limit their use.

72.    Clements's, Swearingen's, and/or Kenexa's misappropriation of Vurv's trade secrets has caused, and will continue to cause, Vurv to suffer damages.    Vurv is entitled to exemplary damages because Clements's, Swearingen's, and/or Kenexa's misappropriation of Vurv's trade secrets was willful and malicious.    In addition to recovering damages, including exemplary damages, suffered as a result of misappropriation, Vurv is entitled to an order enjoining Clements, Swearingen, and Kenexa from continuing their misappropriating activities.

## COUNT 7

### Conspiracy to Misappropriate Trade Secrets

### (Against All Defendants)

73.    Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

74.    If Clements and Swearingen were not Kenexa employees when they misappropriated Vurv's trade secrets, then Vurv alleges, in the alternative to its claim of misappropriation of trade secrets against Kenexa, that Clements, Swearingen, and Kenexa have engaged in activities that constitute conspiracy to misappropriate trade secrets under Georgia law.

75.    While Clements and Swearingen were still employed at Vurv, or after their last day of employment but before they had returned Vurv's computers, Clements, Swearingen, and Kenexa, upon information and belief, entered into a conspiracy to accomplish a common, unlawful design to steal Vurv's confidential and proprietary information.  They arrived at a mutual understanding that, before Clements and Swearingen returned Vurv's computers, Clements and Swearingen would copy Vurv's trade secrets from Vurv's computers or computer networks. The conspirators agreed that they would do this despite not having the permission or authority to do so, and despite the fact that copying, retaining, and/or delivering

26

Vurv's trade secrets to others was in direct violation of Clements's and Swearingen's confidentiality agreements and duty to maintain secrecy.

76.     In furtherance of their unlawful design, the conspirators obtained two virtually identical external hard drives.  Clements and Swearingen then improperly accessed and copied Vurv's trade secrets, using the hard drives to store the data unlawfully copied or removed from Vurv's computers or computer networks.

77.     Clements's, Swearingen's, and/or Kenexa's misappropriation of Vurv's trade secrets in furtherance of their conspiracy has caused, and will continue to cause, Vurv to suffer damages.  Vurv is entitled to exemplary damages because Clements's, Swearingen's, and/or Kenexa's misappropriation of Vurv's trade secrets was willful and malicious.  In addition to recovering damages, including exemplary damages, suffered as a result of misappropriation, Vurv is entitled to an order enjoining Clements, Swearingen, and Kenexa from continuing their misappropriating activities.

## COUNT 8

### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

### (Against All Defendants)

78.     Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

27

79.    Clements, Swearingen, and Kenexa have engaged in activities that constitute violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

80.    The day before her last day of employment with Vurv and after she had accepted an offer of employment from Kenexa, Clements attached—for the first time—an external hard drive to her Vurv-issued computer. Minutes later, Clements improperly accessed and copied approximately 1,300 files. These files were all accessed in a matter of about 15 minutes. Among the files Clements stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

81.    After Clements's last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she had begun her employment with Kenexa, Clements continued to access and copy large groups of documents, folders, and .zip files in short increments of time. When Clements returned Vurv's computer, she did not return any external hard drive or any other backup media.

82.    On the same day that it was determined that Swearingen would not accept the offer to continue her employment with Vurv after its acquisition by Taleo Corporation and after she had accepted an offer of employment from

28

Kenexa, Swearingen attached—for the first time—an external hard drive to her Vurv-issued computer. Minutes later, Swearingen improperly accessed and copied more than 1,000 files in about 13 minutes. Later the same day, Swearingen accessed and copied around 850 folders containing multiple files in about 3 minutes and about 80 .zip files containing multiple files in 1 minute. Among the files Swearingen stole were Vurv strategy documents, confidential drafts of Vurv's consolidated financial statements, return-on-investment analyses, pricing proposals, and customer-specific information.

83.     After her last day of employment with Vurv, before returning the Vurv computer she had been issued, and, upon information and belief, after she had begun her employment with Kenexa, Swearingen continued to access and copy folders containing multiple files in relatively short increments of time. When Swearingen returned Vurv's computer, she did not return any external hard drive or any other backup media.

84.     When they stole Vurv's confidential and proprietary information, Clements and Swearingen had already accepted employment offers from Kenexa and, upon information and belief, were Kenexa employees.

85.     Clements, Swearingen, and Kenexa intentionally accessed Vurv's computers without authorization, or exceeded authorized access, thereby obtaining

information from Vurv's protected computers, which are used in or affecting interstate commerce or communication.

86.    Clements, Swearingen, and Kenexa have caused Vurv to incur an aggregated loss of at least $5,000 during a 1-year period as a result of their violations of the Computer Fraud and Abuse Act, including, but not limited to, as a result of Vurv's responding to their actions and conducting an investigation and damages assessment.

87.    Moreover, Clements, Swearingen, and Kenexa acted knowingly and with intent to defraud.  By intentionally accessing Vurv's computers without authorization, or exceeding authorized access, Clements, Swearingen, and Kenexa obtained information valued at more than $5,000 in any 1-year period.

88.    Clements's, Swearingen's, and/or Kenexa's violations of the Computer Fraud and Abuse Act have caused, and will continue to cause, Vurv to suffer damages.

## COUNT 9

## Conspiracy to Violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

## (Against All Defendants)

89.    Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

30

90.     If Clements and Swearingen were not Kenexa employees when they stole Vurv's confidential and proprietary information, then Vurv alleges, in the alternative to its claim that Kenexa violated the Computer Fraud and Abuse Act, that Clements, Swearingen, and Kenexa have engaged in activities that constitute conspiracy to violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

91.     While Clements and Swearingen were still employed at Vurv, or after their last day but before they had returned Vurv's computers, Clements, Swearingen, and Kenexa, upon information and belief, entered into a conspiracy to accomplish a common, unlawful design to steal Vurv's confidential and proprietary information.   They arrived at a mutual understanding that, before Clements and Swearingen returned Vurv's computers, Clements and Swearingen would copy or remove Vurv's confidential and proprietary information from Vurv's computers or computer networks, despite not having the permission or authority to do so.

92.     In furtherance of their unlawful design, the conspirators intentionally accessed Vurv's computers or networks without authorization, or exceeded authorized access, thereby obtaining information from Vurv's protected computers, which are used in or affecting interstate commerce or communication.

93.    Clements, Swearingen, and Kenexa have caused Vurv to incur an aggregated loss of at least $5,000 during a 1-year period as a result of their violations of the Computer Fraud and Abuse Act, including, but not limited to, as a result of Vurv's responding to their actions and conducting an investigation and damages assessment.

94.    Moreover, Clements, Swearingen, and Kenexa acted knowingly and with intent to defraud.   By intentionally accessing Vurv's computers without authorization, or exceeding authorized access, Clements, Swearingen, and Kenexa obtained information valued at more than $5,000 in any 1-year period.

95.    Clements's, Swearingen's, and/or Kenexa's violations of the Computer Fraud and Abuse Act have caused, and will continue to cause, Vurv to suffer damages.

## COUNT 10

### Tortious Interference with Contract

### (Against Kenexa)

96.    Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

97.    Kenexa has engaged in activities that constitute tortious interference with contract under Georgia law.

98.     Kenexa has known, and knows, that Vurv's employees are required to maintain strict confidentiality with respect to Vurv's confidential and proprietary information, that this information is not available to the general public, and that this information is subject to Vurv's rights, including, but not limited to, Vurv's valid copyrights.

99.     While Clements and Swearingen were still employed at Vurv, or after their last day but before they had returned Vurv's computers, Kenexa, upon information and belief, acted improperly and without privilege by conspiring with them to improperly access and copy Vurv's confidential and proprietary information in order to gain a competitive advantage.  By doing so, Kenexa interfered with the contractual relationship between Vurv and its employees, inducing Clements and Swearingen to breach their confidentiality agreements by misappropriating Vurv's trade secrets.

100.   Kenexa acted purposefully and with malice, intending to injure Vurv by compromising its confidential and proprietary information.  As a result of Kenexa's actions, Clements and Swearingen breached their confidentiality agreements by accessing, copying, retaining, and/or using thousands of documents, folders, and .zip files without Vurv's permission.

101.   Kenexa's interference with the contractual relationships between Vurv and Clements and Swearingen has caused, and will continue to cause, Vurv to suffer damages.

## COUNT 11

### Application for Injunctive Relief

### (Against All Defendants)

102.   Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

103.   In accordance with the Court's authority to grant injunctive relief, Vurv seeks the issuance of preliminary and permanent injunctions upon hearing and trial, respectively.  Specifically, Vurv requests that the Court enter preliminary and permanent injunctions against Clements, Swearingen, and Kenexa, enjoining them from viewing, using, copying, disclosing, or disseminating Vurv's confidential and proprietary information, and ordering them to return all documents and electronic media containing such information.

104.   Vurv is entitled to injunctive relief because, if Clements, Swearingen, and/or Kenexa are permitted to view, use, copy, disclose, or disseminate Vurv's confidential and proprietary information, Vurv will be immediately and irreparably harmed.  Permitting Clements, Swearingen, and/or Kenexa continued access to

Vurv's confidential and proprietary information compromises Vurv's competitive position in the marketplace because the data copied and retained contains, among other things, Vurv customer-, financial-, and strategy-related information.

105. Injunctive relief is appropriate under the circumstances because money damages will be inadequate to compensate Vurv for the unfair advantage gained by Kenexa and other competitors as a result of Clements's, Swearingen's, and/or Kenexa's improper access to, theft of, disclosure of, dissemination of, or use of Vurv's confidential and proprietary information. Moreover, injunctive relief is appropriate because Clements and Swearingen signed confidentiality agreements stating that they could be subjected to such relief in the event they breached their obligations under those agreements.

106. Vurv is entitled to injunctive relief because Vurv has no adequate remedy at law.

107. Vurv is entitled to injunctive relief because there is a substantial likelihood of Vurv's success on the merits. Clements and Swearingen signed confidentiality agreements, promising that they would hold Vurv's confidential and proprietary information in strictest confidence and would not disclose such information to any person, firm, or corporation without prior written authorization.

108. Clements and Swearingen also agreed that they could be held strictly liable for any abuse of Vurv's computers or systems by use of their workstations or passwords, including, but not limited to: (a) knowingly, and without permission, accessing Vurv's computers or systems to wrongfully obtain or otherwise use Vurv's data; and (b) knowingly, and without permission, taking, copying, or making use of any data or supporting documentation from a computer, computer system, or network. Clements and Swearingen further agreed that, when they left Vurv's employment, they would not use, copy, keep, or deliver to anyone else, any of Vurv's confidential and proprietary information. Clements and Swearingen also acknowledged their understanding that a breach of any of their obligations under these confidentiality agreements could subject them to pecuniary damages and injunctive relief.

109. Contrary to their agreements, Clements and Swearingen improperly accessed and copied thousands of documents, folders, and .zip files to external hard drives without Vurv's permission. Although Clements and Swearingen later returned their computers, they did not return any external hard drives or any other backup media. Both Clements and Swearingen now work for Kenexa, one of Vurv's primary competitors. When they stole Vurv's confidential and proprietary

36

information, Clements and Swearingen had already accepted employment offers from Kenexa and, upon information and belief, were Kenexa employees.

110.   Vurv is entitled to injunctive relief because the risk of harm to Vurv outweighs any harm that injunctive relief might inflict on Clements, Swearingen, or Kenexa.   Vurv will be harmed because money damages will be inadequate to compensate Vurv for the unfair advantage gained by Kenexa and other competitors as a result of Clements's, Swearingen's, and Kenexa's improper access to, theft of, disclosure of, dissemination of, or use of Vurv's confidential and proprietary information.   The issuance of an injunction poses no countervailing risk of harm to Clements, Swearingen, or Kenexa.   Moreover, Clements and Swearingen signed confidentiality agreements stating that they could be subjected to such relief in the event they breached their obligations under those agreements.

111.   Vurv is entitled to injunctive relief because the public interest will not be disserved or adversely affected by granting the requested injunctive relief.

112.   Vurv is willing to post a bond, but requests that any bond imposed by the Court be nominal in light of the absence of harm to Clements, Swearingen, and Kenexa from the issuance of a preliminary injunction.

## COUNT 12

### Punitive Damages Pursuant to O.C.G.A. § 51-12-5.1

### (Against All Defendants)

113.   Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

114.   Through their conduct, Clements, Swearingen, and Kenexa have demonstrated willful misconduct, wantonness, malice, fraud, oppression, and/or that entire want of care that would raise the presumption of conscious indifference to consequences.

115.   Vurv is entitled to recover punitive damages from Clements, Swearingen, and Kenexa in an amount to be determined by the enlightened conscience of an impartial jury, pursuant to O.C.G.A. § 51-12-5.1.

## COUNT 13

### Attorneys' Fees and Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11

### (Against All Defendants)

116.   Vurv incorporates by reference and realleges all of the allegations in paragraphs 1 through 25 as if fully set forth herein.

117.   Clements, Swearingen, and Kenexa have acted in bad faith, been stubbornly litigious, and caused Vurv unnecessary trouble and expense.

118.   Vurv is entitled to recover attorneys' fees and expenses of litigation from Clements, Swearingen, and Kenexa, pursuant to O.C.G.A. § 13-6-11.

### VII.   Prayer for Relief

Wherefore, Vurv respectfully requests that the Court:

(a)   enjoin Clements, Swearingen, and Kenexa from viewing, using, copying, disclosing, or disseminating Vurv's confidential and proprietary information;

(b)   order Clements, Swearingen, and Kenexa to return all documents and electronic media containing Vurv's confidential and proprietary information;

(c)   enjoin Clements, Swearingen, and Kenexa from continuing their infringing, misappropriating, interfering, and other unlawful or improper activities;

(d)   award Vurv compensatory, unjust enrichment, and punitive damages;

(e)   award Vurv pre- and post-judgment interest for all damages awarded;

(f)   award Vurv its reasonable expenses, including attorneys' fees and costs;  and

(g)   grant to Vurv any other, alternative, or further relief, whether at law or in equity, that the Court deems appropriate and just.

Respectfully submitted this 7th day of November, 2008.

By: _____

Shattuck "Tucker" Ely
Georgia Bar No. 246944
Kevin P. Weimer
Georgia Bar No. 745979

FELLOWS LABRIOLA LLP
Peachtree Center
Suite 2300, South Tower
225 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 586-2022—Telephone
(404) 586-9201—Facsimile
tely@fellab.com
kweimer@fellab.com

Jay F. Utley
Texas Bar No. 00798559
Brian McCormack
Texas Bar No. 00797036
Nathan A. Engels
Texas Bar No. 24036526
J. Brent Alldredge
Texas Bar No. 24040409

(*Pro Hac Vice* Applications Pending)

BAKER & McKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
(214) 978-3000—Telephone
(214) 978-3099—Facsimile
jay.f.utley@bakernet.com
brian.c.mccormack@bakernet.com
nathan.a.engels@bakernet.com
brent.alldredge@bakernet.com

ATTORNEYS FOR PLAINTIFF,
VURV TECHNOLOGY LLC

DALDMS/650466.9